No. 44.—JAMES R. FINDLAY, administrator, &c. with the will annexed, &c. plaintiff in error, *vs.* JOHN WHITMIRE and HENRY WHITMIRE, defendants in error.

[1.] *Semble,* that an appeal lies to the Superior Court, from a decision by the Court of Ordinary, refusing an *ex parte* application, made by an executor or administrator.

[2.] When legatees appear in the Court of Ordinary, and *caveat* an order asked for by an administrator *cum testamento annexo,* and the same is refused, and an appeal taken by the administrator, these legatees become parties to the appeal.

[3.] An appeal lies from any decision made by the Court of Ordinary, in our State.

[4.] The Superior Court executes its judgment, in such case, by mandate to the Court of Ordinary.

Appeal. Superior Court of Gilmer county. Decision by Judge IRVIN, December Term, 1853.

James R. Findlay, as administrator with the will annexed, of Wm. Whitmire, deceased, applied to the Court of Ordinary of Gilmer county, for an order to sell the land and negroes of the estate. A caveat was entered to this order, by two of the legatees. The Ordinary refused the order, and the administrator entered an appeal to the Superior Court.

A motion was made to dismiss the appeal, on the ground that an appeal did not lie from such a decision.

The Court granted the motion, and this decision is assigned as error.

There being no appearance for the defendant in error, the case proceeded *ex parte.*

McDONALD, for plaintiff in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] We are informed that the first reason assigned for the

dismissal of this appeal, in the Court below, was that there were no parties before the Court. We incline to think, that under the Act of 1805, (*Cobb's N. D.* 283,) an appeal would lie from the refusal, by the Court of Ordinary, of an *ex parte* application, made by an executor or administrator. This would seem but a fair and reasonable construction of that Statute ; and we believe that it was the contemporaneous exposition of the same. The language of the Act of 1851, constituting the Court of Ordinary, as at present organized, is similar, in terms, and will, we think, admit of the same construction.

[2.] But it is unnecessary for us, formally, to decide this in the case before us, for there are two parties to this proceeding. Two legatees of the testator, whose names appear in the record, came forward and objected to, or caveated the application made by the administrator, with the will annexed. That caveat formed an issue, and the caveators were parties to that issue. When the issue was carried up by appeal, they were of course parties to the appeal.

[3.] We are also informed that another objection to the hearing of this case was, that in our State, no appeal lies from the decision of the Court of Ordinary, in any but a case touching the probate of wills and granting letters of administration.

The peculiar phraseology of the Act of 1805, just mentioned, and of the Act of 1823, providing for the trials of appeals from the Court of Ordinary, by a Special Jury, seems to lend some encouragement to this idea. We believe, however, that the uniform construction of these Statutes has been otherwise. But whether so or not, the objection, in this case, is disposed of by the Act of 1851. That Act authorizes an appeal from " any decision" of the Ordinary. See *Acts. p.* 97.

[4.] The objection, that such an appeal does not lie, because the Superior Court cannot carry its judgment into execution, is not well taken.

It is true, that the Superior Court cannot grant letters testamentary, or of administration ; but it is not true, that it cannot carry its judgment into effect. To that judgment it gives effect, by issuing its mandate to the Court of Ordinary, if it

deem it meet and proper that such letters should be granted; and having authority to enforce the obedience of that Court, it thus executes its judgment.

Let the judgment be reversed.